STATE OF CONNECTICUT *v.* HAROLD TRENT
BUTLER
(AC 17753)

Foti, Lavery and Landau, Js.

Argued June 8—officially released November 2, 1999

*Avery S. Chapman,* for the appellant (defendant).

*Mitchell S. Brody,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael A. Pepper,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Harold Trent Butler, appeals from the judgment of conviction, rendered after a jury trial, of murder as an accessory in violation of General Statutes §§ 53a-54a (a) and 53a-8 and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a). On appeal, the defendant claims that the trial court improperly (1) denied his motions for a mistrial that were based on the existence of egregious prosecutorial misconduct, (2) adopted a curative instruction that was insufficient to cure the prejudice caused by the misconduct, (3) denied his motion to set aside the verdict on the basis of juror misconduct and (4) admitted evidence of uncharged misconduct. We agree with the defendant and reverse the judgment of the trial court.[1]

The record discloses the following information that is relevant to the resolution of this appeal. On March 21, 1994, Officer William Coppola of the New Haven police department was dispatched to 305 Exchange

---

[1] Because we agree with the defendant's first claim, we find it unnecessary to address his remaining claims.

Street, where he discovered the body of the victim, Amenophis Morris. The victim had sustained fatal gunshot wounds. At the defendant's trial, Jeffrey Dolphin testified for the state concerning the circumstances surrounding the murder. Dolphin testified that on March 21, 1994, Terrance Stevenson forced him at gunpoint into a motor vehicle driven by James Baker. Jermaine Harris and the defendant were passengers in Baker's vehicle.

Dolphin testified that when Baker was driving on Exchange Street, one of the vehicle's occupants noticed the victim standing on the front porch of 305 Exchange Street. Baker then parked the vehicle farther down the block. Dolphin testified that Stevenson and Harris exited the vehicle and walked toward the victim. Baker and the defendant then exited the vehicle and waited near the front of the car. Dolphin testified that shortly after he heard six or seven gunshots, Harris, Baker, Stevenson and the defendant returned to the vehicle, and either Harris or Stevenson stated, "I got the mother . . . I got the asshole."

Dolphin did not immediately contact the police. On April 22, 1994, the police arrested Dolphin on unrelated narcotics charges, and he provided information about the murder. The police subsequently arrested Harris, Stevenson, Baker and the defendant, and charged them with murder as accessories and conspiracy to commit murder. Dolphin testified at the trials of Baker and Stevenson, which preceded the defendant's trial, and Baker and Stevenson were convicted on both charges. In the present case, the jury found the defendant guilty of murder as an accessory and conspiring to commit murder. He received a total effective sentence of forty-five years imprisonment. This appeal followed.

The defendant claims that the trial court improperly denied his motions for a mistrial, which he based on

the existence of egregious prosecutorial misconduct that deprived him of his due process right to a fair trial in violation of the federal constitution. After careful examination of the specific circumstances in this case, we agree with the defendant.[2]

The following additional facts are relevant to a resolution of this issue. The defendant was charged with accessory to murder and conspiring to commit murder. At trial, the prosecutor claimed that the defendant aided and abetted Baker, Harris and Stevenson in murdering the victim, and conspired with them to commit the murder. In its appellate brief, the state concedes that the jury was informed that the trials of Baker and Stevenson had preceded the defendant's trial and that Dolphin had testified in those trials.

In closing argument to the jury, defense counsel stated: "[O]ne of the most difficult parts about [this case] has been tracking all of the inconsistencies of the state's witness, Mr. Dolphin. The witness for the state, Jeffrey Dolphin, has lied to you, ladies and gentleman. He has lied to the police, he has lied to other juries, he has lied to you as members of this jury. He has lied to an officer of the court, attorney [Leo] Ahern. But don't take my word for it, just look at his testimony . . . ." The prosecutor neither objected to this statement when it was made, nor did he object at the conclusion of defense counsel's closing argument, nor did he request a curative instruction or some other remedy.

[2] The defendant neither invokes our state's constitution nor provides an independent analysis of his claim pursuant to the state constitution. Accordingly, we limit our analysis to the protection afforded by the federal constitution. See *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998). Because we conclude that the prosecutor's misconduct deprived the defendant of his due process right to a fair trial, we need not reach his claims that reversal of the judgment is warranted pursuant to our supervisory powers and that the misconduct unconstitutionally burdened the exercise of his constitutional right of confrontation.

Instead, in rebuttal, the prosecutor stated: "[T]he other thing [defense counsel] said to you—I do not want you to be left with the wrong impression—he said that [Dolphin] has lied to other juries. *Well, let me tell you, ladies and gentlemen, I wish I could tell you what other juries decided, but I am not allowed to.*" (Emphasis added.) At the conclusion of the prosecutor's rebuttal, after the court had excused the jury, defense counsel orally moved for a mistrial.[3] The court stated: "That is absolutely some of the most impermissible argument I have heard. . . . I am so upset about this, and I am going to think about it during the lunch hour, but you might think about what I might send to the New York District Attorney."[4] After the lunch recess, defense counsel filed a written motion for dismissal, mistrial, surrebuttal time or a corrective instruction. The prosecutor claimed that his statement was invited by defense counsel and that he was merely attempting to counteract defense counsel's assertion that Dolphin had lied to other juries. Defense counsel responded that his statement merely referred to the inconsistencies in Dolphin's testimony in this trial and the two previous trials. The court agreed with defense counsel. Despite stating that the prosecutor's comment was prejudicial, improper and unprofessional, the court denied the defendant's motions for dismissal and a mistrial, but granted the request for a curative instruction.

---

[3] Defense counsel claimed that "a corrective instruction in no way could possibly repair the irreparable harm done by [the prosecutor's] comment. We feel that . . . [there was] a quite clear inference that these other people have been convicted and that, therefore, [the jury] should convict [the defendant]."

Defense counsel also stated that if the trial court denied its motion for a mistrial, it sought several alternatives: a hearing and submission of briefs to determine whether a mistrial was appropriate or surrebuttal during closing argument.

[4] The state's appellate brief discloses that "[t]his was the prosecutor's final case before going to work in the district attorney's office in Brooklyn, New York."

The following principles govern our review of the defendant's claim. It is well recognized that the state's attorney "is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging his most important duties, he deserves and receives in peculiar degree the support of the court and the respect of the citizens of the county. By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." *State* v. *Ferrone*, 96 Conn. 160, 168–69, 113 A. 452 (1921).

"The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial. *State* v. *DeMatteo*, 186 Conn. 696, 703, 443 A.2d 915 (1982); *State* v. *Gooch*, 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio*, 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980) . . . . When a mistrial is sought on the ground that a prosecutor's improper remarks violated the defendant's constitutional right to due process of law the same standard applies. See *State* v. *Cosgrove*,

186 Conn. 476, 488–89, 442 A.2d 1320 (1982); *State* v. *Hawthorne*, 176 Conn. 367, 372, 407 A.2d 1001 (1978). The burden on the defendant is to show that the prosecutor's remarks were prejudicial in light of the entire proceeding. See *State* v. *Cosgrove*, supra, 488–89; *State* v. *Hawthorne*, supra, 372; *State* v. *Kinsey*, 173 Conn. 344, 348–49, 377 A.2d 1095 (1977). The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Cosgrove*, supra, 488–89, citing *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)." (Citation omitted.) *State* v. *Ubaldi*, 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983).

"[A] state's attorney should scrupulously avoid questions of probable impropriety . . . ." (Internal quotation marks omitted.) *State* v. *Piskorski*, 177 Conn. 677, 719, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). " 'A demonstrated deliberate effort by a prosecutor to influence the jury against the defendant through the attempted introduction of obviously inadmissible evidence may entitle the defendant to a new trial. *United States* v. *Woods*, 486 F.2d 172 (8th Cir. [1973]); *State* v. *Hafner*, 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 [1975].' *State* v. *Baker*, 182 Conn. 52, 58, 437 A.2d 843 (1980). While the absence of bad faith by a prosecutor is to be accorded considerable weight in a given case, that, however, is not to say that a showing of good faith by the prosecutor is 'determinative.' *State* v. *Hafner*, [supra, 249]. Indeed, it is 'well established that serious prosecutorial misconduct, regardless of the prosecutor's intentions, may so pollute a criminal prosecution as to require a new trial, even without regard to the prejudice to the defendant.' [Id.], 251. Crucial considerations in appellate adjudication of

such questions are not only the need, where demonstrated, to discipline prosecutors where reprehensible conduct is present but to assure ultimate fairness to the defendant. [Id.], 252; see *Smith* v. *Phillips*, [supra, 455 U.S. 219]." *State* v. *Binet*, 192 Conn. 618, 629, 473 A.2d 1200 (1984).

"Prosecutorial misconduct may also occur in the course of closing argument. *State* v. *Pelletier*, [196 Conn. 32, 33–34, 490 A.2d 515 (1985)]; *State* v. *Couture*, 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. *State* v. *Fullwood*, 194 Conn. 573, 585, 484 A.2d 435 (1984).

"The defendant claims that the prosecutorial misconduct in this case was so egregious that it deprived him of his constitutional right to a fair trial under the due process clause of . . . [the] federal [constitution]. In analyzing the defendant's claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden* v. *Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986), quoting *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *State* v. *Hawthorne*, [supra, 176 Conn. 372]. We do not focus alone, however, on the conduct of the prosecutor." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by

defense conduct or argument; *State* v. *Fullwood*, supra [194 Conn. 585]; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, supra, [194 Conn.] 562–63; see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 163, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra [1181]; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra [654]; and the strength of the state's case. See *United States* v. *Modica*, supra [1181]; *State* v. *Couture*, supra, 564; *State* v. *Glenn*, [194 Conn. 483, 492, 481 A.2d 741 (1984)]." *State* v. *Williams*, supra, 204 Conn. 540.

We must first determine whether the prosecutor's statement was improper. The jury was aware that the state had charged Baker, Stevenson, Harris and the defendant as accessories and coconspirators in the same murder, and that the trials for Baker and Stevenson had preceded the defendant's trial. On several occasions, the court instructed the parties to refrain from mentioning the outcome of those prior proceedings. The court properly determined that when viewed in this context, the prosecutor's comment informed the jury that the state's chief witness had testified in the previous trials and that juries had convicted both Baker and Stevenson of the same crimes with which the defendant was charged. The court stated that the prosecutor's comment was deliberate, improper, prejudicial and unprofessional.

"[A] defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been

convicted of the same charge." *United States* v. *Miranda*, 593 F.2d 590, 594 (5th Cir. 1979). "Generally, the guilty plea or conviction of a co-defendant or co-conspirator is not admissible at trial, and such guilty pleas and convictions are never admissible as substantive evidence of the defendant's guilt. *United States* v. *Blandford*, 33 F.3d 685, 709 (6th Cir. 1994), cert. denied, [514 U.S. 1095], 115 S. Ct. 1821, 131 L. Ed. 2d 743 (1995). However, guilty pleas and convictions may be introduced into evidence if the co-conspirator or co-defendant testifies at trial, so that the factfinder will have appropriate facts on hand to assess the witness's credibility. Id. . . . Convictions and guilty pleas generally are not admissible for credibility purposes if the co-conspirator or co-defendant does not testify, and convictions and guilty pleas of co-conspirators or co-defendants other than the witness are not admissible to attack or bolster the witness's credibility. See *United States* v. *Austin*, 786 F.2d 986, 992 (10th Cir. 1986) . . . ." (Citation omitted.) *United States* v. *Sanders*, 95 F.3d 449, 454 (6th Cir. 1996); see also *State* v. *Just*, 185 Conn. 339, 343–48, 441 A.2d 98 (1981).

In the present case, neither Baker nor Stevenson testified at the defendant's trial, and the prosecutor did not offer the challenged statement to impeach the credibility of either Baker or Stevenson. The state neither claims, nor does the record disclose, any legitimate justification for informing the jury of the outcomes of the Baker and Stevenson trials. Accordingly, the prosecutor's comment was improper. We must, therefore, next determine whether the prosecutor's misconduct, viewed in the context of the entire trial, deprived the defendant of his due process right to a fair trial. As previously stated, we focus on six factors in determining whether prosecutorial misconduct was so serious as to amount to a denial of due process. See *State* v. *Williams*, supra, 204 Conn. 540.

First, the state claims that the prosecutor's reference to the outcome of the Baker and Stevenson trials was invited by defense counsel.[5] It claims that the prosecutor made this statement to counteract the prejudicial impact of defense counsel's assertion that Dolphin had lied to other juries. The state's argument presupposes, however, that defense counsel's comment was improper. Although the state claims that defense counsel's statement was improper, the prosecutor neither objected at the time the statement was made, nor did he object at the conclusion of defense counsel's closing argument, nor did he request a curative instruction or some other remedy. The court concluded that defense counsel's statement was permissible because it referred to the inaccuracies defense counsel had pointed out in Dolphin's testimony. At trial, defense counsel attempted to impeach Dolphin's credibility by pointing out inconsistencies in his testimony. Defense counsel claimed that his statement that Dolphin had lied to other juries merely referred to these testimonial inconsistencies, and the court agreed.[6] Additionally, unlike the prosecutor's statement, defense counsel's comment did not

---

[5] The " 'opening the door' or 'invited error' doctrine . . . does not condone a prosecutor's improper argument by adopting the proposition that two wrongs make a right. It merely recognizes that the prosecutor's misconduct may be less damaging to the defendant when balanced against the defense counsel's excesses." *United States* v. *Napue*, 834 F.2d 1311, 1324 (7th Cir. 1987). "[I]f defense counsel exceeds proper bounds in eliciting evidence, the prosecutor can object and can even ask that defense counsel be held in contempt; the prosecutor may not, however, fight fire with fire." Id.

[6] In a colloquy with the court, defense counsel explained his assertion that Dolphin had lied to other juries:

"[Defense Counsel]: Your Honor, I would just briefly add something, two sentences.

"The Court: Uh-huh.

"[Defense Counsel]: Mr. Dolphin was many times confronted with his prior testimony in other trials here, that was the nature of the reference, I do not think—

"The Court: I am accepting your claim on that.

"[Defense Counsel]: You saw me reading from transcripts. Thank you."

directly or indirectly disclose the outcomes of the prior trials.

Second, several factors establish the severe nature of the prosecutor's misconduct. The United States Court of Appeals for the Fourth Circuit has stated: "It is a well-accepted principle that 'evidence about the conviction of a co-conspirator is not admissible as substantive proof of the guilt of a defendant.' *United States* v. *Leach*, 918 F.2d 464, 467 (5th Cir. 1990), cert. denied, [501 U.S. 1207], 111 S. Ct. 2802, 115 L. Ed. 2d 976 (1991). In criminal cases, it is the province of the defendant's jury to resolve questions of credibility; referring to what another jury may have done is clearly improper because the defendant's jury cannot permissibly rely on what they may assume a previous jury to have found. See *United States* v. *Samad*, 754 F.2d 1091, 1100 (4th Cir. 1984) (observing that a prosecutor may not argue evidence not presented to the jury). Such conduct 'raises the concern that a defendant might be convicted based upon the disposition of the charges against the [co-conspirator], rather than upon an individual assessment of the remaining defendant's personal culpability.' . . . Indeed, improper use of a co-conspirator's conviction infringes on the principle that the 'central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence.' *Delaware* v. [*Van Arsdall*], 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986)." (Citation omitted.) *United States* v. *Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993).

Furthermore, "[a] demonstrated deliberate effort by a prosecutor to influence the jury against the defendant through the attempted introduction of obviously inadmissible evidence may entitle the defendant to a new trial." *State* v. *Binet*, supra, 192 Conn. 629. The prosecutor's misconduct constituted a wilful violation of an order of the trial court and a deliberate attempt to improperly influence the jury. In its instruction to the

jury, the trial court stated that the prosecutor's comment constituted "a deliberate attempt to mislead you to consider matters not for your consideration and that it was a distortion of the truth in fact. . . . The fact is that [the prosecutor] has had a copy of that charge and heard me numerous times during the trial on a specific theme to disregard these matters throughout the trial."[7]

Third, we consider the frequency of the prosecutor's misconduct. Other than the blatantly egregious comment the prosecutor made during rebuttal, the record discloses that he did not make any additional references to the outcome of the Baker and Stevenson trials. The prosecutor's improper reference to the outcome of those trials did not, however, constitute his only act of misconduct. The court strongly admonished the prosecutor for engaging in improper communication with a witness during the course of the trial.[8]

---

[7] In the following colloquy between the court and the prosecutor, the court stated that the prosecutor's misconduct was deliberate:

"[The Prosecutor]: If Your Honor is going to give an instruction at all, I have given Your Honor an instruction in my jury charge that I had submitted back in February, 1997, February 11, 1997, about disregarding any coparticipants, whether they have been arrested or tried or about to be tried.

"The Court: That is interesting that even you put that down and you argued against it in front of this jury.

\* \* \*

"The Court: [T]he more you say, the more I defend my decision that I will have to put on the record as to what and why I think you did this and the nature of how deliberate I think it is myself."

[8] During the prosecutor's cross-examination of the defendant, the court, defense counsel and the prosecutor engaged in the following colloquy:

"[The Prosecutor]: You were arrested in 1988 [for] threatening and convicted of that charge in 1988, isn't that true, sir?

"[The Defendant]: Yes.

"[The Prosecutor]: If I may have a moment, Judge?

"The Court: Uh-huh.

"[Defense Counsel]: Mr. Butler, [the prosecutor] is still questioning.

"[The Prosecutor]: I do not think that counsel should be communicating with the witness.

"The Court: I have seen you doing it.

"[The Prosecutor]: When?

"The Court: During this trial.

Fourth, in considering the centrality of the misconduct to the critical issues of the case, we conclude that the prosecutor's misconduct went to the very heart of this case. In closing argument, the prosecutor repeatedly emphasized that the outcome of this case turned on the credibility of witnesses.[9] Dolphin was the state's most important witness, and the prosecutor's misconduct improperly bolstered Dolphin's credibility by informing the jury that the state already had convicted

---

"[The Prosecutor]: In what circumstances?

"The Court: You walked up to a witness and talked to a witness while something else was going on.

"[The Prosecutor]: Which witness was that?

"The Court: I cannot recall. You doubting my word?

"[The Prosecutor]: Well, I do not think it should be on the record.

"The Court: Are you? Are you? Are you?

"[The Prosecutor]: I may have—

"The Court: You shake your head at my rulings all the time and everything else and I am sick of that. You [have] been talking about that, but I am sick of you shaking your head and doing all these things that even another judge has said something to me about.

\* \* \*

"[The Prosecutor]: I may have gotten somebody a glass of water during one of the breaks.

"The Court: I saw you talking to him.

"[The Prosecutor]: Not about what was going on in the courtroom, and that is what was going on here and I think it is inappropriate.

"[Defense Counsel]: Your Honor, I just want to address the court so the record is clear. [The defendant] made some hand gestures to me. I pointed to [the prosecutor] and said [that the prosecutor] is still questioning you. That was the sum and substance of my communication with [the defendant], okay. The communication was initiated by [the defendant] and I did not respond other than to indicate that [the prosecutor] was still questioning him.

"[The Prosecutor]: I do not think there should be any communication while I am still questioning.

"The Court: He is not asking for communication. In fact, I saw what was going on. [The defendant] might have wanted to communicate with [defense counsel] but [defense counsel] did what he was supposed to do. He just sat there and brought it to your attention that he wanted to talk to him."

[9] The prosecutor stated: "Now, the judge is also going to give you instructions on the criteria you are going to be using to judge the credibility of witnesses. And a lot of this case is about credibility of witnesses." Later in this closing argument, the prosecutor stated: "I would submit to you one more time, ladies and gentlemen, that this case is about credibility."

Baker and Stevenson based in part on Dolphin's testimony. The "government's attempt to bolster the credibility of government witnesses by saying their previous testimony resulted in convictions of other defendants [is] improper"; *United States* v. *Taylor*, 900 F.2d 779, 781 (4th Cir. 1990); and "convictions and guilty pleas of co-conspirators or co-defendants other than the witness are not admissible to attack or bolster the witness's credibility." *United States* v. *Sanders*, supra, 95 F.3d 454. Moreover, where, as here, a defendant is charged with conspiring with others to commit murder, the introduction of evidence of coconspirator convictions as substantive proof of the defendant's guilt is central to this ultimate determination. "Such conduct raises the concern that a defendant might be convicted based upon the disposition of the charges against the [co-conspirator], rather than upon an individual assessment of the . . . defendant's personal culpability. . . . Indeed, improper use of a co-conspirator's conviction infringes on the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." (Citation omitted; internal quotation marks omitted.) *United States* v. *Mitchell*, supra, 1 F.3d 240.

Fifth, we consider the strength of the state's case. The state neither cites, nor can we discern from the record, any physical evidence tying the defendant to the murder. Dolphin was the only witness the state produced who directly connected the defendant to the murder, and in his closing argument, the prosecutor conceded that defense counsel had pointed out several inconsistencies in Dolphin's testimony.[10] Dolphin's

---

[10] The prosecutor stated: "Now I would submit to you, ladies and gentlemen, it is easy for [defense counsel] to point out this discrepancy and this inconsistency. That is what he is trained to do. He has had months to . . . go over all these various statements that Mr. Dolphin has given and other witnesses have given. He has hundreds of pages of trial transcripts from Mr. Baker's case, from Mr. Stevenson's case. I would submit to you, ladies and gentlemen, it is easy for him to say, 'Mr. Dolphin, you said X on this

credibility was pivotal to the outcome of this case and, as we have already stated, the prosecutor improperly bolstered Dolphin's credibility by informing the jury that he had testified in the two previous trials and that both Baker and Stevenson had been convicted.

Finally, we consider the strength of the curative measures adopted by the court. The court granted defense counsel's request for a curative instruction and instructed the jury to disregard the prosecutor's comment.[11] Several courts have recommended that reviewing courts should scrutinize more closely the purported remedial effect of a curative instruction in cases where a prosecutor has improperly disclosed a coconspirator's guilty plea. See, e.g., *United States* v. *Kroh*, 915 F.2d 326, 336–37 (8th Cir. 1990) (en banc) (Lay, C. J., dissenting); *United States* v. *Gullo*, 502 F.2d 759, 761 (3d Cir. 1974). The reasoning underlying this recommendation extends to cases involving the improper disclosure of a coconspirator's conviction. Although we generally accord deference to a trial

date three years ago, and now you are saying it a little different a year later. And you said it a little different six months after that. And what you are saying today, is it based on what you saw three years ago.' . . . Do we expect to plug Mr. Dolphin into an electrical outlet, turn on the play button and have him recite in exact detail exactly what was said every time he was confronted by representatives of the defendant and the defendant's coconspirators . . . ."

[11] The court instructed the jury as follows: "I have one other matter that I have to address, a very important matter. In [the prosecutor's] second argument, there were comments made to you that I immediately pointed out to you were impermissible and ordered you to disregard. My comments at that time were insufficient. [The prosecutor's] argument was clearly improper, unprofessional and a deliberate attempt to mislead you to consider matters not for your consideration, and it was a distortion of the truth in fact.

"Again, in my charge, I will address this issue. The fact is that [the prosecutor] has had a copy of that charge and heard me numerous times during this trial on a specific theme to disregard these matters throughout the trial. For you to speculate about matters not in evidence in this case would be a very grave injustice and in the strongest terms possible I order you, I order you to disregard his comments."

court's efforts to eliminate prejudice through a curative instruction, in certain circumstances we have concluded that no curative instruction reasonably could have been expected to remove the prejudicial impact of prosecutorial misconduct. See *State* v. *Binet*, supra, 192 Conn. 632–34; *State* v. *Williams*, 41 Conn. App. 180, 190–91, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996). "[A] curative instruction is not inevitably sufficient to overcome the prejudicial impact of inadmissible evidence. See also *Jackson* v. *Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). One court, observing that a cautionary instruction does not always remove the prejudice involved, has aptly stated: It must be remembered that after the saber thrust, the withdrawal of the saber still leaves the wound. *United States* v. *Rudolph*, 403 F.2d 805, 807 (6th Cir. 1968)." (Internal quotation marks omitted.) *State* v. *Binet*, supra, 633.[12] In the present case, the trial court itself questioned whether a curative instruction adequately could remove the prejudice caused by the misconduct.[13]

---

[12] "The naive assumption that [all] prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." (Citation omitted.) *Krulewitch* v. *United States*, 336 U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring); see also *Bruton* v. *United States*, 391 U.S. 123, 129, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) (" 'too often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors' ").

[13] In the following colloquy with defense counsel, the court expressed reservation about the adequacy of a curative instruction:

"The Court: I was concerned when I was addressing this issue if I was going to give a curative instruction specifically referring to the actual language [used by the prosecutor] and just say [that] when I said that [the prosecutor's statement was] impermissible and disregard it—I am just curious, do you think that you are going to do more harm than good?

"[Defense Counsel]: Our defense position at this point, Your Honor, is that the cat is out of the bag. This is an intelligent jury. They heard the comment. It is no longer an issue of, gee, I do not want a corrective instruction because I might draw attention to what was said. They know what was said. It was a very strong inference. It was addressed by Your Honor and there was a significant pause in the proceedings. We respectfully request that for that reason also, the fact that any type of curative instruction

After careful examination of each of those six factors in light of the specific circumstances of this case and despite the trial court's use of a curative instruction; see *United States* v. *Miranda*, supra, 593 F.2d 595–96 (doubtful that any curative instruction could have erased prejudice from minds of jurors resulting from improper disclosure of coconspirator's conviction); we conclude on the basis of the severity of the misconduct, its centrality to the critical issues in the case and the weakness of the state's case, that the prosecutor's misconduct deprived the defendant of his due process right to a fair trial. See *United States* v. *Austin*, supra, 786 F.2d 991–92 (prosecutor's improper disclosure of coconspirators' convictions constituted reversible error); *United States* v. *Miranda*, supra, 595–96 (same).[14] When prosecutorial misconduct has deprived a defendant of a fair trial, a new trial is warranted. *State* v. *Binet*, supra, 192 Conn. 634; *State* v. *Williams*, supra, 41 Conn. App. 191.

The judgment is reversed and the case is remanded for a new trial.

In this opinion LANDAU, J., concurred.

FOTI, J., dissenting. I respectfully dissent. The primary issue in this appeal is whether the trial court properly denied the defendant's motion for a mistrial on the ground of prosecutorial misconduct. The defendant argues that the remarks made by the prosecutor were so prejudicial as to deprive him of a fair trial and violated his right to due process, in spite of the court's

---

you intend to give would draw attention to it means that only solution is a mistrial."

[14] In reaching this conclusion, we also reject the state's alternative ground for affirming the judgment. Pursuant to Practice Book § 63-4 (a) (1), the state claimed that the court properly denied the defendant's motions for a mistrial because the prosecutor's comment disclosing the outcome of the Baker and Stevenson trials was justified pursuant to the "invited response" doctrine.

emphatic curative instruction.[1] Alternatively, he claims that even if he was not denied a fair trial, we should exercise our supervisory authority to grant him a new trial. See *State* v. *Pouncey,* 241 Conn. 802, 808, 699 A.2d 901 (1997) (court has supervisory power to order new trial to deter prosecutorial misconduct that is " 'unduly offensive to the maintenance of a sound judicial process' ").

As a preliminary matter, let me state that the prosecutor's remarks were clearly improper and perhaps worthy of sanction. I also conclude, however, that defense counsel's earlier remark that "[Jeffrey Dolphin] has lied to other juries," made during final argument, also was improper. As a result, I view the prosecutor's misconduct as having been invited by the defendant's argument.

The defendant argues that his comment was not improper because on cross-examination of Dolphin, defense counsel elicited certain inconsistencies in prior statements and prior testimony in other cases.[2] My review of the record discloses that Dolphin never admitted lying in other cases or at any other time. The purpose of the cross-examination was to allow the defendant to argue to the jury that Dolphin was not credible in his current testimony because of prior inconsistencies. In remarking in final argument that Dolphin had lied to other juries, however, the defendant was inviting the jury to speculate that other juries had disbelieved his testimony and, therefore, had acquitted the codefendants, James Baker and Terrance Stevenson.

---

[1] The court also offered defense counsel the opportunity for surrebuttal argument to the jury. The offer was withdrawn when defense counsel proffered that he would, if given that chance, argue that the jury should adopt a negative inference from the prosecutor's remarks, i.e., that the remarks were motivated by a bad case.

[2] In using the trial transcripts, the defendant brought forward inconsistencies in the testimony given at the trials of James Baker and Terrance Stevenson. Some of the testimony, however, was consistent with Dolphin's direct testimony in this matter.

In final closing argument, the prosecutor replied, "I do not want you to be left with the wrong impression—[defense counsel] said that [Dolphin] has lied to other juries. Well, let me tell you, ladies and gentlemen, I wish I could tell you what other juries decided, but I am not allowed to." The obvious meaning of that remark was that "defense counsel implied that other juries had acquitted Baker and Stevenson, and I am implying otherwise."

Closing argument by both sides should be based on the evidence presented during trial. There was no evidence presented concerning the verdicts in other cases, which evidence would have been totally improper. Given the circumstances of this case combined with the very strong curative instruction given by the court; see footnote 11 of the majority opinion; I would not reverse this conviction.[3] There was no due process violation and the defendant was not deprived of a fair trial. I would, therefore, affirm the judgment.

---

[3] In fact, courts in other jurisdictions have found that the introduction of evidence of a codefendant's conviction was not per se prejudicial, especially if the introduction was in some way invited by defense counsel; see *United States* v. *Casto*, 889 F.2d 562, 567 (5th Cir. 1989), cert. denied, 493 U.S. 1092, 110 S. Ct. 1164, 107 L. Ed. 2d 1067 (1990) (not improper in light of possibility that defense counsel would later inquire about guilty plea to impeach witness); *United States* v. *Bryza*, 522 F.2d 414, 424–25 (7th Cir. 1975), cert. denied, 426 U.S. 912, 96 S. Ct. 2237, 48 L. Ed. 2d 837 (1976) (not prejudicial when used to refute defendant's inference that codefendants were not indicted); *Swift* v. *United States*, 314 F.2d 860, 863 (10th Cir. 1963) (not prejudicial when used to counter defendant's argument that, since codefendants did not know merchandise was stolen, defendant did not know); or if the trial court gave a curative instruction to the jury. See *United States* v. *Hartmann*, 958 F.2d 774, 781–82 (7th Cir. 1992) (instruction that codefendant's guilty plea was " 'not to be considered as evidence against the defendants' " sufficient to cure prejudice); *United States* v. *De La Vega*, 913 F.2d 861, 866–67 (11th Cir. 1990), cert. denied, 500 U.S. 916, 111 S. Ct. 2011, 114 L. Ed. 2d 99 (1991) (curative instruction rendered exposure to codefendant's conviction harmless); *United States* v. *Pickett*, 746 F.2d 1129, 1135–36 (6th Cir. 1984), cert. denied, 469 U.S. 1226, 105 S. Ct. 1222, 84 L. Ed. 2d 362 (1985) (jury capable of abiding by court's clear, direct corrective instruction not to consider evidence of codefendants' guilty pleas).