STATE OF CONNECTICUT *v.* TOMMIE L. MARTIN
(AC 22978)

Dranginis, Flynn and McDonald, Js.

Argued December 10, 2002—officially released July 8, 2003

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, was *Patricia M. Froelich*, state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Tommie L. Martin, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), robbery in the first degree in violation of General Statutes §§ 53a-133 and 53a-134 (a) (2), and

felony murder in violation of General Statutes § 53a-54c. On appeal, the defendant claims, among other things, that the trial court improperly took judicial notice of the fact that Carlton Martin, the defendant's alleged coconspirator and accomplice, had been convicted of the crimes of felony murder, robbery in the first degree and five counts of tampering with a witness.[1] Because we agree that the court improperly took judicial notice of the conviction of the defendant's alleged coconspirator and accomplice, we reverse the judgment of the trial court and remand the case for a new trial.[2]

The following facts and procedural history are relevant to our resolution of the defendant's appeal.[3] In connection with the death of Robert Gallo during an alleged armed robbery at Gallo's liquor store in Danbury on January 18, 1999, the defendant pleaded not guilty to a long form information charging him with conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2), robbery in the first degree in violation of §§ 53a-133 and 53a-134 (a) (2), and felony murder in violation of § 53a-54c.[4] In each

---

[1] In addition to his claim regarding judicial notice, which is his third claim on appeal, the defendant also claims that the court improperly (1) concluded that the prerequisites for admissibility of certain evidence had been satisfied under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), when Carlton Martin refused to answer questions by reason of his fifth amendment privilege, (2) permitted Carlton Martin's invocation of his fifth amendment privilege to occur in the jury's presence (a) after an offer of proof made clear that the witness was going to invoke his privilege and (b) where the court's attempted curative instruction failed to remove the prejudice caused thereby, and (4) failed to charge the jury as requested by the defendant on the affirmative defense to felony murder set forth in General Statutes § 53a-54c, when sufficient evidence existed regarding the statutory prerequisites for that defense.

[2] Because we resolve the defendant's third claim regarding judicial notice in his favor, we do not address his remaining claims because they are not likely to arise in a new trial. See footnote 18.

[3] For a more complete recitation of the facts underlying the criminal prosecutions brought against the defendant and Carlton Martin, see *State* v. *Martin*, 77 Conn. App. 778, 825 A.2d 835 (2003).

[4] Initially, the defendant was charged with felony murder and robbery in the first degree. The defendant's case also was joined initially with Carlton

count of the long form information, the state alleged that the defendant and his cousin, Carlton Martin, were coconspirators or accomplices.[5] On December 14, 2000, the jury returned a guilty verdict on all three counts, and on February 16, 2001, the court sentenced the defen-

Martin's case, but on October 10, 2000, after jury selection, the cases were severed and Carlton Martin was tried first. Carlton Martin was convicted of felony murder, robbery in the first degree and five counts of tampering with a witness. See *Martin* v. *Flanagan*, 259 Conn. 487, 489, 789 A.2d 979 (2002); *State* v. *Martin*, 77 Conn. App. 778, 825 A.2d 835 (2003). Thereafter, on November 14, 2000, the state filed the long form information charging the defendant with the additional count of conspiracy to commit robbery in the first degree.

[5] The first count of the long form information charged the defendant with conspiracy to commit robbery in the first degree and alleged that "on or about January 18, 1999, [the defendant] did, with intent that conduct constituting a crime, to wit: Robbery in the First Degree, be performed, agree with another person, to wit: Carlton Martin, to engage in or cause the performance of such conduct, and either he or Carlton Martin committed an overt act, to wit: entering Gallo's Hi-Way Package store while either [the defendant] or Carlton Martin was armed with a deadly weapon in pursuance of such conspiracy, in violation of Sections 53a-48 and 53a-134 (a) (2) of the Connecticut General Statutes . . . ."

The second count charged the defendant with robbery in the first degree and alleged that "at approximately 10:30 a.m. on or about January 18, 1999 at Gallo's Hi-Way Package Store . . . [the defendant] did, in the course of committing a larceny, use or threaten the immediate use of physical force upon another person, to wit: Robert Gallo, for the purpose of preventing or overcoming resistance to the taking of the property, to wit: bottles of liquor, or to the retention thereof immediately after the taking, or compelling the owner of such property or another person to deliver up such property, and in the course of the commission of the robbery or of immediate flight therefrom, he or another participant in the crime, to wit: Carlton Martin, was armed with a deadly weapon, to wit: a Titan .25 caliber pistol, in violation of Section 53a-133 and 53a-134 (a) (2) of the Connecticut General Statutes . . . ."

The third count charged the defendant with felony murder and alleged that "at approximately 10:30 a.m. on or about January 18, 1999 at Gallo's Hi-Way Package Store . . . [the defendant] did, acting with one other person, to wit: Carlton Martin, commit or attempt to commit robbery and, in the course of and in furtherance of such crime or flight therefrom, he, or another participant, to wit: Carlton Martin, caused the death of a person, to wit: Robert Gallo, who was not a participant in the crime of robbery, and who died as a result of gunshot wounds to the head and neck, in violation of Section 53a-54c of the Connecticut General Statutes."

dant to a total effective term of ninety years imprisonment.[6] This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the court, during its final instructions to the jury, improperly took judicial notice of the fact that Carlton Martin had been convicted of the crimes of felony murder, robbery in the first degree and five counts of tampering with a witness. The defendant argues that contrary to the court's determination, statements made by defense counsel during closing argument to the jury did not require the court to inform the jury that Carlton Martin had been convicted of crimes arising out of the same incident that prompted the defendant's trial. The defendant contends that the value of the court's instruction informing the jury of the conviction was outweighed by its prejudicial effect and deprived him of his due process right to a fair trial under the federal constitution.[7] We agree.

The following additional facts are necessary for our resolution of the defendant's claim. At the defendant's trial, the state called Carlton Martin as a witness after he had been convicted in a separate trial.[8] The court

---

[6] On February 16, 2001, prior to sentencing, the court denied the defendant's motion for a judgment of acquittal and denied without prejudice his motion for a new trial.

[7] The defendant neither specifically invokes our state constitution nor provides an independent analysis of his claim pursuant to the state constitution. Accordingly, we limit our analysis to the protection afforded by the federal constitution. See *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998); *State* v. *Butler*, 55 Conn. App. 502, 505 n.2, 739 A.2d 732 (1999), aff'd, 255 Conn. 828, 769 A.2d 697 (2001).

[8] The state filed a motion in limine indicating its intention to call Carlton Martin as a witness at the defendant's trial. Counsel for both Carlton Martin and the defendant objected on several grounds, including the expected invocation by Carlton Martin of his privilege against self-incrimination. In an offer of proof, Carlton Martin was called as a witness for questioning, outside the presence of the jury, so that the court could rule on the admissibility of his testimony. See *Martin* v. *Flanagan*, 259 Conn. 487, 490–93, 789 A.2d 979 (2002) (setting forth details involving Carlton Martin's invocation of privilege against self-incrimination while being questioned outside presence of jury at defendant's trial).

determined that because Carlton Martin had testified at his criminal trial, he could no longer invoke his privilege against self-incrimination at the defendant's trial.[9] Nonetheless, when Carlton Martin was called to testify before the jury at the defendant's trial, he refused to answer any questions that could have placed the defendant in his company on January 18, 1999, or connected the defendant to the alleged murder weapon.[10] During the evidentiary phase of the defendant's trial, the jury was not informed of Carlton Martin's conviction or the disposition of any charges brought against him.

During closing argument, defense counsel argued that the state had failed to present sufficient evidence to prove that the defendant and Carlton Martin committed the robbery and murder. Specifically, defense counsel emphasized the lack of blood evidence linking the defendant or Carlton Martin to the crime and stated: "[The state] didn't have any of that [forensic blood evidence] because there isn't any of it, not on either Carlton Martin or [the defendant]. There is, on whoever was back there doing the shooting, not Carlton and not [the defendant]. . . . And, I'm asking you, why isn't there anything about all this blood? And, it's because the state can't explain it except to say Carlton and [the

---

[9] Carlton Martin sought a writ of error from the trial court's determination, claiming that the court improperly rejected his assertion of his fifth amendment privilege not to testify and improperly held him in contempt for refusing to testify at the defendant's trial. *Martin* v. *Flanagan*, 259 Conn. 487, 489, 789 A.2d 979 (2002). Our Supreme Court agreed and determined that Carlton Martin "properly invoked his privilege" at the defendant's trial. Id., 494. The court explained that a waiver of the privilege against self-incrimination in one proceeding does not affect the rights of a witness in another, separate proceeding; id., 496–99; and, accordingly, concluded that the trial court's determination that Carlton Martin could not invoke the privilege at the defendant's trial was improper. Id., 499–503.

[10] The questions posed to Carlton Martin in the presence of the jury, to which he invoked his privilege against self-incrimination at the defendant's trial, are summarized in *Martin* v. *Flanagan*, 259 Conn. 487, 492–93, 789 A.2d 979 (2002).

defendant] didn't do it. Carlton and [the defendant] didn't do it and get into [the] car because the evidence would have been on Carlton or [the defendant's] clothes or in [the] car, and it's not there. And the only reason it's not there is because *they're not guilty*." (Emphasis added.)

In light of defense counsel's statement that the defendant and Carlton Martin were "not guilty," the state, before presenting its rebuttal argument to the jury, asked the court to take judicial notice of the fact that Carlton Martin had been convicted of robbery in the first degree, felony murder and five counts of tampering with a witness. Defense counsel objected, arguing that it would be "incredibly prejudicial to the defendant" to advise the jury that Carlton Martin already had been found guilty of the charges. Defense counsel maintained: "It will implant in the jurors' minds the fact that other jurors considered evidence and already made a decision, and why should they think about it independently, just go with what has already been presented and already concluded. And, the court will be advising them, if [it takes] judicial notice, that this is a fact. He's guilty."

The court, in overruling the objection, concluded: "The state and the defense and the court have stayed away from the conviction of Carlton Martin as such. . . . I think [defense counsel's] comment has invited the request of the state. Otherwise, [the jury is] left with the impression that . . . Carlton Martin was not convicted of anything or that he is not guilty, and that simply is not true. He was found guilty by a jury and sentenced by the court. So, here's what I'll do. I will instruct the jury that I've taken judicial notice of the fact that Carlton Martin was convicted of felony murder, robbery in the first degree and five counts of witness tampering on November 1, 2000, and they may, if they wish, take that as a fact, but I will also tell them that

they're not required to accept that as conclusive. And, I'm basing that statement I just made on § 2-1 of the Connecticut Code of Evidence."[11]

Thereafter, following the state's closing rebuttal argument,[12] the court gave its final instructions to the jury. In instructing the jury, the court stated: "I am now taking judicial notice of the fact that Carlton Martin, on November 1, 2000, was convicted of the crimes of felony murder, robbery in the first degree and five counts of tampering with a witness. That—those judicially noticed facts are not binding on you. They're not conclusive, but you may accept them as conclusive if you wish. I instruct [that] you are not to draw an inference that [the defendant] is guilty of the offense as charged simply because Carlton Martin was convicted of those offenses. You must judge [the defendant] on the evidence produced in this courtroom in this case."

We begin by setting forth certain legal principles that guide us in our review. "Judicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed. . . . The underlying theory is that proof by evidence concerning a proposition may be dispensed with where the court is justified, by general considerations, in declaring the truth of the proposition without requiring evidence from

[11] Section 2-1 of the Connecticut Code of Evidence provides: "(a) Scope of section. This section governs only judicial notice of adjudicative facts.

"(b) Taking of judicial notice. A court may, but is not required to, take notice of matters of fact, in accordance with subsection (c).

"(c) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration.

"(d) Time of taking judicial notice. Judicial notice may be taken at any stage of the proceeding.

"(e) Instructing jury. The court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."

[12] The state, in its rebuttal argument, remarked: "You heard [defense counsel] tell you that [the defendant] and Carlton Martin are not guilty. *You will hear from [the trial judge] with respect to Carlton Martin.*" (Emphasis added.)

the party. . . . This theory goes no further, however, than to mean that the proposition is taken as true without an offer of proof by the party who should ordinarily have offered it." (Citations omitted.) *State* v. *Tomanelli*, 153 Conn. 365, 368–69, 216 A.2d 625 (1966); see also *De Luca* v. *Park Commissioners*, 94 Conn. 7, 10, 107 A. 611 (1919) ("[j]udicial notice, in its appropriate field, displaces evidence, since, as it stands for proof, it fulfils the object which evidence is designed to fulfil, and makes evidence unnecessary").

"The doctrine of judicial notice is not a hard and fast one. It is modified by judicial discretion. . . . Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case." (Internal quotation marks omitted.) *De Luca* v. *Park Commissioners*, supra, 94 Conn. 10; see also Conn. Code Evid. § 2-1 (b); C. Tait, Connecticut Evidence (3d Ed. 2001) § 2.2, p. 108. "Whether to take judicial notice of a fact is a function of the exercise of judicial discretion." (Internal quotation marks omitted.) *Pie Plate, Inc.* v. *Texaco, Inc.*, 35 Conn. App. 305, 316, 645 A.2d 1044, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994).

Thus, "a trial court's determination [to take or] not to take judicial notice is essentially an evidentiary ruling. . . . Our role in reviewing evidentiary rulings of the trial court is settled. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 398–99, 662 A.2d 118 (1995).

As previously set forth, the court determined that defense counsel's statement that "they're not guilty," exceeded the appropriate scope of final argument because, in essence, the statement suggested an inference from facts not in evidence, such as the verdict in

Carlton Martin's trial, and presented a matter that the jury had no right to consider.[13] Thus, it was within the court's discretion to limit the scope of final argument to prevent the jury from being influenced by improper matter that might prejudice its deliberations. We generally accord deference to a court's efforts to eliminate prejudice through a curative instruction. See *State* v. *Butler*, 55 Conn. App. 502, 517–18, 739 A.2d 732 (1999) (when court instructs jury to disregard counsel's improper comment, "we generally accord deference to [such] efforts to eliminate prejudice through a curative instruction"), aff'd, 255 Conn. 828, 769 A.2d 697 (2001). The court, however, did not simply identify defense counsel's improper comment and instruct the jury to disregard the comment.[14] Instead, the court concluded that the comment "invited" or opened the door for the court affirmatively to take judicial notice of Carlton Martin's conviction.[15]

[13] "[T]he scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations. . . .

"Our Supreme Court frequently has stressed the importance of restricting comments made during closing arguments to matters related to the evidence before the jury. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, *it must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Rios*, 74 Conn. App. 110, 119, 810 A.2d 812 (2002), cert. denied, 262 Conn. 945, 815 A.2d 677 (2003).

[14] The court could have commented on defense counsel's argument by warning the jury that it should not involve itself in conjecture or surmise regarding the disposition of any charges against Carlton Martin, and that defense counsel's argument as to his being "not guilty" was not evidence and should not be considered as such.

[15] Generally, a party who delves into a particular subject or initiates discussion on an issue is said to have "opened the door" to rebuttal by the opposing party or to a response by the court. *State* v. *Lewis*, 67 Conn. App. 643,

"It is a well-accepted principle that evidence about the conviction of a co-conspirator is not admissible as substantive proof of the guilt of a defendant. . . . Indeed, improper use of a co-conspirator's conviction infringes on the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." (Citations omitted; internal quotation marks omitted.) Id., 513.

"[A] defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been convicted of the same charge. . . . Generally, the guilty plea or conviction of a co-defendant or co-conspirator is not admissible at trial, and such guilty pleas and convictions are never admissible as substantive evidence of the defendant's guilt." (Citation omitted; internal quotation marks omitted.) Id., 510–11; see also *State* v. *Just*, 185 Conn. 339, 347–48, 441 A.2d 98 (1981) (fact that person jointly charged with crime pleaded guilty not admissible on trial of another person so charged to establish that crime was committed); *State* v. *Pikul*, 150 Conn. 195, 198, 187 A.2d 442 (1962) (same).

There are, however, certain permissible purposes for the use of guilty pleas and convictions of alleged coconspirators or accomplices at trial. For example, guilty pleas and convictions may be used *to impeach the credibility* of a testifying coconspirator or codefendant so

---

652–53, 789 A.2d 519, cert. denied, 261 Conn. 938, 808 A.2d 1133 (2002). As we stated in *State* v. *Butler*, supra, 55 Conn. App. 502, however, the "opening the door" or "invited error" doctrine does not stand for the proposition that "two wrongs make a right." (Internal quotation marks omitted.) Id., 512 n.5. "The doctrine of opening the door cannot . . . be subverted into a rule for injection of prejudice. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into [or discussion of] the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original [discussion or] evidence." (Internal quotation marks omitted.) *State* v. *Lewis*, supra, 653.

that the fact finder will have appropriate facts on hand to assess the witness' credibility. *State* v. *Butler*, supra, 55 Conn. App. 511; see also *State* v. *Just*, supra, 185 Conn. 343–48; *State* v. *Pikul*, supra, 150 Conn. 198–99. In addition, a court may take judicial notice of a testifying accomplice's or witness' conviction or guilty plea *to a charge based on facts unrelated to those involved in the information against the defendant* for purposes other than proving the defendant's guilt. See *State* v. *Taylor*, 153 Conn. 72, 85–86, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966).

In the present case, although Carlton Martin was called as a witness to testify at the defendant's trial, his conviction was not offered or used to impeach his credibility. Furthermore, Carlton Martin's conviction was not for crimes based on facts unrelated to those involved in the information against the defendant; rather, it was for crimes involving the same factual situation alleged in the information against the defendant, which specifically alleged that the defendant and Carlton Martin were participants in the crimes.

Although the state maintains that defense counsel's remarks during closing argument invited or opened the door for the court to inform the jury of Carlton Martin's conviction, we note that the "opening the door" or "invited error" doctrine "cannot . . . be subverted into a rule for injection of prejudice." (Internal quotation marks omitted.) *State* v. *Lewis*, 67 Conn. App. 643, 653, 789 A.2d 519, cert. denied, 261 Conn. 938, 808 A.2d 1133 (2002); see footnote 15. Moreover, the court has inherent authority to *prevent* the jury from being influenced by matters that might prejudice its deliberations. See generally *State* v. *Dorans*, 261 Conn. 730, 755, 806 A.2d 1033 (2002) (recognizing trial court's inherent authority to exclude conviction otherwise qualifying for admission when prejudicial tendency outweighs proba-

tive value); *State* v. *Crnkovic*, 68 Conn. App. 757, 764–65, 793 A.2d 1139 (court must undertake balancing test before admitting evidence of witness' conviction to determine if probative value outweighs any prejudicial impact), cert. denied, 260 Conn. 925, 797 A.2d 521 (2002); Conn. Code Evid. §§ 6-7 (a),[16] 4-3.[17] "Evidence is prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Feliciano*, 256 Conn. 429, 454, 778 A.2d 812 (2001); *State* v. *Rivera*, 74 Conn. App. 129, 151, 810 A.2d 824 (2002).

In *State* v. *Butler*, supra, 55 Conn. App. 506–19, we held that a *prosecutor's* comment during closing argument regarding the outcomes of the trials of the defendant's coconspirators deprived the defendant of his due process right to a fair trial. We explained that in criminal cases, "referring to what another jury may have done is clearly improper because the defendant's jury cannot permissibly rely on what they may assume a previous jury to have found. . . . Such conduct raises the concern that a defendant might be convicted based upon

[16] Section 6-7 (a) of the Connecticut Code of Evidence provides: "For the purpose of impeaching the credibility of a witness, evidence that a witness has been convicted of a crime is admissible if the crime was punishable by imprisonment for more than one year. In determining whether to admit evidence of a conviction, the court shall consider:

"(1) The extent of the *prejudice* likely to arise,

"(2) the significance of the particular crime in indicating untruthfulness, and

"(3) the remoteness in time of the conviction." (Emphasis added.)

[17] Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

*That discretionary rule of exclusion* is not limited just to issues of relevancy, but applies to the admission of all types of evidence and it *applies to each section of the code* even though not expressly referenced therein. C. Tait, supra, § 4.7.2, p. 207.

the disposition of the charges against the [co-conspirator], rather than upon an individual assessment of the remaining defendant's personal culpability." (Citation omitted; internal quotation marks omitted.) Id., 513.

The concerns discussed in *Butler* extend to cases where, as here, the disclosure of the coconspirator's conviction is made by the court; when the court provides the jury with such information, the potential for prejudice is substantial. "A judge presiding at a jury trial occupies a role of inherent power and dignity that commands a deference from the jury impossible to appraise precisely. What he tells the jury . . . has great weight with them." (Internal quotation marks omitted.) *State* v. *Loughlin*, 149 Conn. 21, 27, 175 A.2d 367 (1961). "It is enough to say that the trial judge is the arbiter of the many circumstances which may arise during a trial in which his function is to assure a fair and just outcome." *State* v. *Marquez*, 160 Conn. 47, 52, 273 A.2d 689 (1970); *State* v. *Jennings*, 5 Conn. App. 500, 508, 500 A.2d 571 (1985).

In light of the foregoing principles and the specific facts and circumstances of this case, we conclude that the court abused its discretion by taking judicial notice of the conviction of the defendant's alleged coconspirator and accomplice during its final instructions to the jury, thereby providing the jury with unduly prejudicial matter for deliberation. The court's improper comment deprived the defendant of his due process right to a fair trial and warrants a new trial.[18]

---

[18] As previously indicated, because we resolve the defendant's third claim regarding judicial notice in his favor and remand the case for a new trial, we would address his remaining claims if they were likely to arise in the new trial. See footnotes 1 and 2. As to his first claim, we note only that it is predicated on the court's determination that Carlton Martin could not invoke his privilege against self-incrimination at the defendant's trial and conclude that this issue is not likely to recur in the new trial in light of our Supreme Court's holding in *Martin* v. *Flanagan*, 259 Conn. 487, 499-503, 789 A.2d 979 (2002) (concluding that trial court's determination that Carlton Martin could not invoke privilege at defendant's trial was improper); see

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

footnote 9. Accordingly, we do not reach that claim. As to the defendant's second and fourth claims, we note that because we do not know the course of events that will transpire or what evidence will be presented at the defendant's new trial, we do not reach those claims.