## TRAVIS FALLS *v.* LOEW'S THEATRES, INC.
### (AC 14943)

O'Connell, C. J., and Schaller and Hennessy, Js.

Argued April 25—officially released September 9, 1997

*Joel M. Fain*, with whom, on the brief, was *Mary J. Ambrogio*, for the appellant (defendant).

*Paul J. Yamin*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Loew's Theatres, Inc., appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Travis Falls, in this negligence action. The defendant claims that

the trial court improperly (1) excluded evidence of a witness' prior inconsistent statement, (2) permitted the plaintiff's expert to testify as to the possibility of future surgery, (3) refused to grant it a continuance, (4) interrupted its counsel during his opening statement and (5) failed to set aside the verdict as excessive. We agree with the defendant's first claim and, because it is dispositive of the appeal, we reverse the judgment of the trial court and remand the case for a new trial.[1]

The relevant facts are as follows. On May 17, 1991, the plaintiff and two friends, Steven Fasciano and Sean Sant, attended a movie at the defendant's theatre in the town of Torrington. After the movie concluded, the plaintiff and his friends were leaving the theater through the lobby when they noticed some other teenage boys pointing at them and appearing to talk about them. At that point, the plaintiff, Fasciano and Sant wanted to use the telephone to call for a ride home. Before they were able to use the telephone, however, the ushers instructed the crowd in the lobby, including the plaintiff and his two friends, that they had to leave the theater. Once outside the theater, one of the teenage boys who had been pointing at the plaintiff, Fasciano and Sant approached Fasciano, began arguing with him, and punched him in the face. The plaintiff, who was standing next to Fasciano, was punched by the other boys and, when he went down on his knees to protect himself, was hit several more times in the back of his head and neck. After the fight broke up, the theater personnel escorted the plaintiff and Fasciano into the bathroom to allow them to clean their abrasions.

Subsequently, the plaintiff brought an action alleging that, as a result of the negligence and carelessness of

---

[1] In light of our reversal of the judgment on the basis of the defendant's first claim, we need not address the defendant's remaining claims as we cannot determine that they are likely to occur upon retrial.

the defendant, the plaintiff was assaulted and suffered injuries. The defendant denied the plaintiff's allegations. After a jury trial, a verdict was returned in favor of the plaintiff awarding damages of $104,676. The defendant subsequently moved to set aside the verdict and for a new trial. The motions were denied by the trial court and this appeal followed.

The defendant claims that the trial court improperly excluded evidence of a witness' prior inconsistent statement. "It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. . . . This is based on the notion that talking one way on the stand, and another way previously, raises a doubt as to the truthfulness of both statements." (Citations omitted.) *State* v. *Saia*, 172 Conn. 37, 45, 372 A.2d 144 (1976). "The impeaching statement may be oral . . . or written." (Citations omitted.) *State* v. *Butler*, 207 Conn. 619, 626, 543 A.2d 270 (1988). For the statement to be admissible, "[it] must be substantial and relate to a material matter." *State* v. *Richardson*, 214 Conn. 752, 763, 574 A.2d 182 (1990); see also *Drew* v. *K-Mart Corp.*, 37 Conn. App. 239, 249, 655 A.2d 806 (1995). "The trial court is vested with wide discretion as to what may be admitted as a prior inconsistent statement for impeachment purposes." *State* v. *Richardson*, supra, 764.

With these principles in mind, we turn to the facts and circumstances relevant to the defendant's claim. At trial, the plaintiff produced the testimony of his friend, Christian Hudak. Hudak testified on direct examination that on the night of the incident, the plaintiff had asked him if he wanted to go to the movies. Hudak declined but agreed to meet the plaintiff after the movie. Hudak stated that he walked from his house to the theater and stood outside waiting for the movie to conclude. He

further stated that when he approached the plaintiff and Fasciano as they left the theater, they said that there was a problem with some other teenagers in the theater. Thereafter, Hudak saw the other teenagers approach and start a fight with Fasciano and the plaintiff. Hudak testified further that, after seeing Fasciano struck in the face and the plaintiff drop to the ground, "I ran, some time during the fight, I don't remember when. I ran around the entrance door and I went in the first set of doors. There are two sets, and there was a group of people there, there was a security guard and employees of the movies. And I told them that there was a fight going on. And I said get somebody out there right away, because I didn't personally want to jump into the fight . . . for my own safety. . . . They didn't say anything to me. They all looked at me. They all heard what I said, and they didn't say anything back. I guess I probably assumed that they would follow me. And I just ran back out. . . . The fight was still going on. And there was a security guard right down at another door down further in the parking lot. And I sort of waved him over. I said, you know, 'Fight. There is a fight going on,' and sort of waved him over. I am not really sure of what I did with my body, but I made him aware that there was a fight."

On cross-examination, the defendant's counsel presented Hudak with a two page statement. Hudak confirmed that the statement represented a summary of his account of the incident, which he had given to the plaintiff.[2] The following colloquy then occurred:

[2] The statement stated as follows: "Four years ago this May I witnessed an assault on [the plaintiff]. I went to Loew's Cinema after a movie to meet [the plaintiff] and Steve Fasciano. When I arrived I saw an usher show people out. In the crowd was [the plaintiff] and Steve. When [the plaintiff] and Steve came out they were nervous. They told me some kids were hassling them. I said that they could come to my house until their rides came to be safe. They said the usher would not let them use the phone and said, 'Movie's over. Outside. No hanging out.'—they said their rides were picking them up there. We chatted for a couple of minutes and I started walking away.

"[Defense Counsel]: Is there anything in that statement about an attempt that was made to get back into the theater after they had already come out and met you?

"[Hudak]: No, it doesn't say that.

"[Defense Counsel]: Is there anything in that two page document about attempts that you made to get the attention of ushers or security guards?

"[Hudak]: No, it doesn't. He asked me to be brief and, you know, on the day that I did this, I didn't want to take up much time.

"[Defense Counsel]: So that didn't make it into those two pages?

"[Hudak]: Correct."

Thereafter, the defendant's counsel offered Hudak's statement into evidence for impeachment purposes. The plaintiff's counsel objected. The following colloquy occurred: "The Court: There is nothing to impeach him in there.

"[Defense Counsel]: Oh, absolutely there is, Your Honor. There are a number of omissions that I just highlighted.

"The Court: He just explained that.

"[Defense Counsel]: But I can still offer the document. He can explain it all he wants, but the fact that he left it out of this information that he dictated to [the plaintiff] who transcribed it is indeed an omission.

---

As I walked away, I heard yelling behind me. I turned around and saw people throwing fists. I noticed that it was [the plaintiff] and Steve on the receiving end. I ran over to try to stop it when Matt kicked [the plaintiff] in the head. I noticed that a friend was driving by who was older and larger. I waved him over and he broke it up. He pushed the kids off of [the plaintiff] and Steve and we waited for police."

"[Plaintiff's Counsel]: Your Honor, I don't understand the reasoning there.

"The Court: Objection sustained."

On the basis of our review of Hudak's in-court testimony and his prior statement, we conclude that the trial court improperly refused to admit Hudak's statement for impeachment purposes. "Inconsistencies may be shown not only by contradictory statements but also by omissions, in other words, failures to state certain facts. Thus, if the prior statement fails to mention a material fact presently testified to that it should have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent. *State* v. *Reed*, [174 Conn. 287, 302–303, 386 A.2d 243 (1978)]. . . . Conversely, inconsistency is also shown by a prior statement's containing a material fact that is omitted in testimony." (Citations omitted.) C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.24.3, p. 208; see also *State* v. *Whelan*, 200 Conn. 743, 748 n.4, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Here, Hudak's testimony is inconsistent in both respects. First, his prior statement fails to mention that when the fight broke out he ran into the theater and reported the fight to the theater personnel and that they refused to come to the aid of his friends. Second, Hudak's in-court testimony failed to include that he turned and began walking away from the plaintiff before the fight started as he indicated in his prior statement. Those inconsistencies are substantial and relate to a material issue in that they go to the core of the plaintiff's claim that the theater personnel refused the plaintiff and his friends entry to the theater and that the theater personnel knew there was a fight occurring on the premises but failed to take action to stop it. The fact that Hudak was able to explain why or how the statements differed does not mean that the prior statement should have been excluded. See *State* v. *Walker*, 214 Conn.

122, 130, 571 A.2d 686 (1990) (witness impeached by admission of prior inconsistent statement generally entitled to explain contradictory statement). The prior statement was proper impeachment evidence for the jury to consider.

The judgment of the trial court is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.