STATE OF CONNECTICUT *v.* LARRY POWELL
(AC 24582)

Schaller, McLachlan and Mihalakos, Js.

Argued September 14, 2005—officially released February 7, 2006

*Daniel J. Foster*, special public defender, with whom was *Michael P. Shea*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. Colombo, Jr.*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Larry Powell, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a) and assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1).[1] On appeal, the defendant claims that (1) the trial

---

[1] The defendant was charged, by a long form information, with possession of narcotics in violation of § 21a-279 (a), possession of narcotics with the intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), sale of narcotics in violation of General Statutes § 21a-278 (b), assault of public safety personnel in violation of § 53a-167c (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a.

court improperly admitted evidence regarding a civil lawsuit he brought against the city of Stamford and the police officers who arrested him, and (2) he was denied due process of law as a result of prosecutorial misconduct. We conclude that the court's admission of the evidence was proper and that no prosecutorial misconduct occurred. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 4, 2000, at approximately 1 a.m., Officer Thomas Scanlon of the Stamford police department observed a gold Ford Taurus parked in front of a known drug location at 27 High Street in Stamford. Suspicious of the activity, Scanlon followed the car to the Fairfield Court housing project. As Scanlon drove his police cruiser behind the car, he observed the defendant exit the passenger door of the vehicle. Scanlon proceeded to question the driver and learned that the driver did not know the defendant. On the basis of his experience, Scanlon believed that a drug transaction was occurring. Consequently, Scanlon approached and questioned the defendant as he attempted to enter a building within the housing complex.

During that conversation, the defendant explained that the driver of the Taurus was seeking to buy marijuana. Scanlon asked the defendant if he was carrying any drugs or weapons. The defendant responded in the negative and invited the officer to search him.[2] During the search, Scanlon discovered six bags and one loose rock of crack cocaine concealed in the fold of the defendant's winter cap. The defendant resisted arrest, and an altercation ensued, during which Scanlon used his police radio to request emergency assistance. Officers

---

[2] In contrast to Scanlon's version of the events, the defendant testified that Scanlon had asked to search him and that he believed that he had no choice but to comply.

Brian Cronin and David Dogali of the Stamford police department were the first to respond to the request, and assisted Scanlon in subduing and arresting the defendant. During the scuffle, Cronin kicked at the defendant's leg in an effort to stop him from resisting. The defendant suffered a broken tibia during his arrest.[3]

Following the defendant's arrest, he filed a civil lawsuit against Scanlon, Cronin and the city of Stamford. The lawsuit alleged that the officers, acting in their official capacity, "falsely arrested" the defendant and "employed unreasonable force . . . ." As part of the civil lawsuit, depositions of the arresting officers were taken.

At the defendant's criminal trial, during cross-examination of Scanlon, defense counsel sought to impeach Scanlon's direct testimony with a deposition transcript from the defendant's civil lawsuit. Defense counsel inquired whether Scanlon had placed the defendant's hand "behind [the defendant's] head" during the altercation. Scanlon responded that he had not, at which point defense counsel asked: "You testified in *another proceeding in this matter* regarding this. Do you recall giv[ing] a deposition?" (Emphasis added.) Defense counsel proceeded to impeach Scanlon with his deposition testimony, referring specifically to the "deposition" on five occasions during that initial cross-examination.

On redirect examination, the prosecutor asked: "Counsel had mentioned something about a deposition. Well, what's that all about?" The court overruled an objection as to relevance by defense counsel and allowed the question, and Scanlon replied: "The defendant is suing myself as well as the other officers in the

---

[3] Contrary to the officers' version of the arrest, the defendant testified that he did not resist and that his leg was broken when it was struck by either a flashlight or a police baton.

city of Stamford for, I believe, $1 million or in excess of $1 million."[4]

On recross examination, defense counsel referred to the civil lawsuit by asking: "You're being sued because you were one of the officers that broke [the defendant's]—that injured [the defendant], correct?" In sustaining the state's objection that the question required the witness to give an opinion, the court explained that it believed that defense counsel had opened the door to questioning regarding the civil action. Specifically, the court stated: "The existence of a suit is fine *because that was raised by the deposition business.*" (Emphasis added.)

Throughout the remainder of the trial, both defense counsel and the state made repeated references to the defendant's civil lawsuit. Following his initial objection, defense counsel primarily used that evidence to suggest that the arresting officers had fabricated their version of the events and had falsified their police reports in

---

[4] The complete exchange was as follows:

"[The Prosecutor]: Counsel had mentioned something about a deposition. Well, what's that all about?

"[Defense Counsel]: Objection.

"[The Prosecutor]: Well, he brought it up.

"The Court: Well, the question isn't very specific. What's the basis of your objection?

"[Defense Counsel]: Objecting on grounds of relevance that was very— that the question is very limited.

"The Court: I'll overrule the objection.

"[The Prosecutor]: Thank you.

"[The Witness]: The defendant is suing myself as well as the other officers in the city of Stamford for, I believe, $1 million or in excess of $1 million.

"[The Prosecutor]: And that deposition was something you took?

"[The Witness]: Civil.

"[The Prosecutor]: On the civil end of this?

"[The Witness]: Yes.

"[The Prosecutor]: All right. And that hasn't even come out yet, that case?

"[The Witness]: No.

"[The Prosecutor]: That's still pending, as far as you know?

"[The Witness]: Yes."

light of the pending civil lawsuit.[5] During the cross-examination of Cronin, defense counsel asked, "So, you made every effort to try and take pictures of all of the injuries that [Scanlon] suffered on that night for evidence in the case and in the civil suit?" Defense counsel next inquired of Cronin, "Isn't it, in fact, true that knowing [the defendant] was injured, you discussed the case with the other officers in order to get your story straight?" During the cross-examination of Sergeant James Van Allen, the police supervisor at the scene of the incident, defense counsel again suggested that the police officers had falsified their reports in light of the pending civil lawsuit. Specifically, defense counsel adduced from Van Allen that the police reports were completed sixteen days after the incident occurred and then asked, "At that point, you knew there was probably going to be a lawsuit [filed] against you; is that correct?"[6]

---

[5] Defense counsel also repeatedly utilized various witnesses' civil deposition testimony to impeach their respective trial testimony.

[6] The complete examination was as follows:

"[Defense Counsel]: [The report] was documented approximately two weeks—it's actually sixteen days after the incident happened?

"[The Witness]: Correct.

"[Defense Counsel]: After that point, you knew how severely injured [the defendant] was, correct?

"[The Prosecutor]: Objection.

"The Court: Sustained.

"[Defense Counsel]: At that point, you knew there was probably going to be a lawsuit against you; is that correct?

"[The Prosecutor]: Objection.

"[The Witness]: To my knowledge, there's no lawsuit against me.

"The Court: Was there a lawsuit?

"[Defense Counsel]: There was knowledge on the part of the police.

"The Court: Ask him the question, not tell him the answer.

"[Defense Counsel]: You were well aware at that point that [the defendant] was going to sue you as well as the other officers; is that right?

"[The Witness]: He's never instituted anything against me. There was always—every time we get in a fight with somebody, there's a possibility that they're going to come around and sue us. That's the way things are.

"[Defense Counsel]: Probably even a bigger possibility when that person ends up in the hospital, as in this case; we keep throwing broken leg out, but broken tibia?

The state's use of that evidence included impeaching the credibility of the defendant and suggesting that he had a significant financial incentive to testify falsely. The prosecutor referred to the defendant's "million dollar lawsuit" both while questioning witnesses and during the rebuttal portion of his closing argument.[7]

At the conclusion of the trial, the jury found the defendant guilty of possession of narcotics and assault of public safety personnel. The court rendered judgment in accordance with the verdict and sentenced the defendant to a total effective term of five years incarceration, followed by three years of special parole. The crux of the defendant's appeal centers on the admission of testimony about the civil lawsuit and the state's subsequent use of that evidence. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in permitting the state to elicit testimony that he had filed a civil lawsuit against the arresting officers and the city of Stamford. The state maintains that defense counsel "opened the door for the admission" of that testimony by introducing Scanlon's civil deposition during his cross-examination of Scanlon. The state further contends that the defendant has not demonstrated that the admission of testimony about the civil lawsuit, even if improper, was harmful. We agree with the state's contention that the court did not abuse its discretion in permitting the challenged testimony.

---

"[The Prosecutor]: Your Honor, probably a bigger possibility.

"The Court: Just get to the point, counsel, that's argumentative.

"[Defense Counsel]: It's pretty safe to assume that [the defendant] was going to sue the police at that point; correct?

"[The Witness]: Maybe."

[7] The state repeatedly characterized the defendant's civil lawsuit as a "million dollar lawsuit" while questioning the defendant, a defense witness, various state witnesses and during closing argument.

Before addressing the merits of that claim, we set forth the applicable standard of review. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State v. Aaron L.*, 272 Conn. 798, 811, 865 A.2d 1135 (2005).

The state argues that by cross-examining Scanlon regarding his deposition testimony, the defendant opened the door to the state's line of questioning. We agree. "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence." (Internal quotation marks omitted.) *State v. Colon*, 272 Conn. 106, 186–87, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

In determining whether otherwise inadmissible evidence should be admitted to rebut evidence offered by an opposing party, the "court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice

which might otherwise have ensued from the original evidence." (Internal quotation marks omitted.) Id., 187.

In essence, the defendant argues that the testimony concerning his civil lawsuit was irrelevant and that the prejudice to him that it caused outweighed any legitimate benefit to the state in placing the deposition transcript in its proper context. Specifically, the defendant contends that the admission of the testimony about his civil lawsuit was prejudicial in that it appealed to prejudices against persons who file personal injury and other similar lawsuits seeking damages. Our Supreme Court, however, has stated that "there is no reason to limit the right of a party to place in context testimony adduced by an opposing party and, consequently, appellate courts have not done so." *State* v. *Gonzalez*, 272 Conn. 515, 544, 864 A.2d 847 (2005). Furthermore, the "opening the door" doctrine is expressly intended to "prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Internal quotation marks omitted.) *State* v. *Colon,* supra, 272 Conn. 187. Because the defendant successfully impeached Scanlon's trial testimony with his deposition testimony, the court reasonably determined that the question posed by the state was necessary to place the defendant's reference to a deposition from *"another proceeding in this matter"* in its proper context. Accordingly, because defense counsel introduced evidence concerning the deposition, the court did not abuse its discretion by permitting the state to question Scanlon regarding the context of that deposition.

Even if we assume arguendo that the admission of the challenged testimony was improper, the defendant, nevertheless, has not demonstrated harmfulness. For the defendant to prevail on his claim, he must show

that the error was harmful. *State* v. *Gonzalez*, supra,
272 Conn. 527. "It is a fundamental rule of appellate
review of evidentiary rulings that if [the] error is not
of constitutional dimensions, an appellant has the bur-
den of establishing that there has been an erroneous
ruling which was probably harmful to him. . . . Two
lines of cases have developed setting forth the standard
for reversing nonconstitutional, evidentiary improprie-
ties. Under one line of cases, the defendant must estab-
lish, in order to obtain a reversal of his conviction, that
it is more probable than not that the result of the trial
would have been different if the error had not been
committed. . . . According to a second line of cases,
the defendant must show that the prejudice resulting
from the impropriety was so substantial as to under-
mine confidence in the fairness of the verdict. . . .
Under either formulation, [w]hether [the improper
admission of a witness' testimony] is harmless in a
particular case depends upon a number of factors, such
as the importance of the witness' testimony in the prose-
cution's case, whether the testimony was cumulative,
the presence or absence of evidence corroborating or
contradicting the testimony of the witness on material
points, the extent of cross-examination otherwise per-
mitted, and, of course, the overall strength of the prose-
cution's case. . . . Most importantly, we must examine
the impact of the [improperly admitted] evidence on
the trier of fact and the result of the trial. . . . If the
evidence may have had a tendency to influence the
judgment of the jury, it cannot be considered harmless."
(Citations omitted; internal quotation marks omitted.)
Id., 527–28.

In the present case, the existence of substantial physi-
cal evidence that was indicative of the defendant's guilt,
as well as consistent testimony by the state's witnesses
supporting that physical evidence renders the admis-
sion of evidence concerning the defendant's civil law-

suit harmless. Notwithstanding the defendant's arguments to the contrary, evidence was adduced at trial that the narcotics in question were found on the defendant's person. In addition, the state presented numerous photographs of the injuries sustained by Scanlon during his altercation with the defendant. That physical evidence was supported by consistent testimony by witnesses for the state, including two police officers who testified that they observed Scanlon struggling with the defendant. Because the jury properly could find that evidence credible, we cannot conclude that the defendant met his burden of establishing that the admission of the evidence concerning his civil action was harmful to him.

## II

The defendant next claims that the prosecutor committed misconduct that denied the defendant his due process right to a fair trial.[8] Specifically, the defendant argues that the state's closing argument constituted misconduct in that it (1) implored the jury to find him guilty on a basis other than the evidence of the offense committed, (2) imposed a penalty on him for exercising his first amendment rights and (3) shifted the burden of proof to him.[9] We are not persuaded.

At the outset, we note that the defendant concedes that the instances of alleged misconduct were not preserved for our review. "[T]he touchstone for appellate

---

[8] The defendant also claims that when prosecutorial misconduct itself involves a direct violation of a defendant's constitutional rights, the state must prove harmlessness beyond a reasonable doubt. Because we conclude that misconduct did not occur in the present case, we need not address that issue.

[9] Although the defendant refers to the state's closing argument as the most serious instance of misconduct, he also contends that the state's repeated references to his "million dollar lawsuit," made during the examination of witnesses, "constitutes additional, related misconduct that further exacerbated the improper effects of the state's closing argument."

review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial. . . . [That] determination must involve application of the specific prosecutorial misconduct factors articulated in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), regardless of whether the defendant objected to the incidents of misconduct at trial. . . . Nevertheless, both our Supreme Court and this court have also emphasized that the responsibility of defense counsel, at the very least, [is] to object to perceived prosecutorial improprieties as they occur at trial, and we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was unfair in light of the record of the case at the time. . . . Accordingly, we emphasize that counsel's failure to object at trial, while not by itself *fatal* to a defendant's claim, frequently will indicate on appellate review that the challenged comments do not rise to the magnitude of constitutional error . . . . Put differently . . . prosecutorial misconduct claims [are] not intended to provide an avenue for the tactical sandbagging of our trial courts, but rather, to address gross prosecutorial improprieties that . . . have deprived a criminal defendant of his right to a fair trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Boyd*, 89 Conn. App. 1, 27–28, 872 A.2d 477, cert. denied, 275 Conn. 921, 883 A.2d 1247 (2005); see also *State* v. *Stevenson*, 269 Conn. 563, 573–77, 849 A.2d 626 (2004).

As a preliminary matter, we set forth certain relevant legal principles that guide our resolution of this issue. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . In analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps

are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . . We also note that in order to prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice by establishing that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Boyd*, supra, 28–29; see also *State* v. *Stevenson*, supra, 269 Conn. 571–72.

In the present case, because the claimed prosecutorial misconduct occurred primarily during closing argument, we set forth the legal principles applicable to such claims. "[P]rosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such misconduct has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . .

"Or to put it another way while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. . . . A prosecutor must draw a careful line. On the one hand, he should be fair; he should not seek to arouse passion or engender prejudice. On the other hand, earnestness or even a stirring eloquence cannot convict him of hitting foul blows. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . .

"Last, we note that [w]e do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citation omitted; internal quotation marks omitted.) *State* v. *Boyd,* supra, 89 Conn. App. 29–30. With the foregoing in mind, we turn to the defendant's specific claims.

We begin our analysis by first determining whether the prosecutor's actions constituted misconduct. Only if we determine that misconduct occurred will we proceed to the second question of whether the defendant was denied his due process right to a fair trial.

The defendant first argues that the state's rebuttal argument urged the jury to find him guilty, not on the basis of the evidence of the offenses charged, but rather as a means of sanctioning him for bringing a civil lawsuit. The defendant also argues that by inviting the jury to find him guilty as a means of sanctioning him, the state imposed a penalty on him for bringing his civil

lawsuit, specifically, a penalty that violated his first amendment right to petition the government for redress of grievances. Finally, the defendant argues that the state's rebuttal argument shifted the burden of proof to him to prove that his civil lawsuit had merit. Because each of those arguments depends on whether the prosecutor improperly implored the jury to find the defendant guilty on any basis other than the evidence of the offenses charged, we examine them together.

The following additional facts are necessary to our resolution of the defendant's claims. During the state's initial closing argument to the jury, the prosecutor made no reference to the defendant's civil lawsuit. Nevertheless, in closing argument, defense counsel stated: "[The defendant] testified [that] he's suing the city. He doesn't know anything about $1 million. He personally thinks it's worth $5 million. He's about as much a lawyer as [the prosecutor] is a mathematician or Officer Cronin is an English major." He also stated: "The police break your leg and crack your head open, you get the book thrown at you. Of course, [the defendant] is suing the city, as if we could keep that a secret. That's what happens when things like this happen. . . . This case is about a broken leg. It's not about [the defendant] suing the police department. I'm not coming . . . up here and showing you the pictures. I know you seen all the pictures. You know his leg was broken. You're sick of it. We all are. But what's right is right."

In its rebuttal, the state directly responded to the defendant's closing argument by beginning: "You're right, [the defendant] wants what's right. He wants what's right. You're right, there's no question about that. No question about that he wants $5 million. That's what's right for him. This is about money for this gentleman. Self-serving, it's about money. That's what this is about. You heard testimony about this civil lawsuit, and there was a question asked. You want one? He said five. Five is more than one. It's about money. It's about

money. That's what's right for him. Because remember, everything else is a conspiracy, according to this defendant."

The state completed the remainder of its closing argument without further comment on the defendant's civil lawsuit, but concluded: "At this particular time, ladies and gentlemen, say 'no more' to [the defendant]. Just say 'no more' to him. No more of his inconsistencies, his self-serving statements, his misstatements, [and] the contradictions within his own defense. Say 'no more' to [the defendant]. Say 'no more.' It's about money for this man. It's all about money. He told you about his lawsuit. Say 'no more.' Say 'no more' to his larceny. Say 'no more' to his child support issue that he brought up. Say 'no more' to [the] unjust violation probation hearing. Say 'no more' to his million dollar lawsuit. Say 'no more' to the unlawful hearing. Say 'no more' to conspiracy theories. Just say 'no more' to [the defendant]. And the way you say 'no more' to [the defendant], based on all the evidence that was elicited in this case, is to take the piece of paper, the long form information that the state filed [and] the judge will give you, [and] you find him guilty of those counts. And you say 'no more' to [the defendant]. And you let him know what he knows [to] be true since March 4, 2000, that he is guilty."

In support of his position that the state urged the jury to find him guilty as a means of sanctioning him for initiating a civil lawsuit, the defendant refers to the portion of the state's rebuttal argument in which the prosecutor instructed the jury to "[s]ay 'no more' to [the defendant's] million dollar lawsuit" and then explained that "the way you say 'no more' . . . based on all the evidence that was elicited in this case . . . is to . . . find him guilty of those counts." Although the state made repeated references to the defendant's "million dollar lawsuit" during its rebuttal argument, those comments made up only a small portion of the state's closing

argument and were not objected to by defense counsel. Indeed, rather than imploring the jury to find the defendant guilty on an improper basis, the state, on two occasions, expressly instructed the jury to base its verdict on "all the evidence that was elicited in this case . . . ." Because the existence of the defendant's civil lawsuit was properly admitted into evidence, it was permissible for the jury to consider such evidence and any inferences that could be drawn therefrom. See *State* v. *Mulero*, 91 Conn. App. 509, 520, 881 A.2d 1039 (2005) ("[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences the jurors might draw therefrom" [internal quotation marks omitted]). Consequently, the jury was free to question the veracity of the defendant in light of the pending civil lawsuit. Finally, the defendant raised his civil lawsuit in closing argument, and "[t]he state may . . . properly respond to inferences raised by the defendant's closing argument." (Internal quotation marks omitted.) *State* v. *Boyd*, supra, 89 Conn. App. 37. The prosecutor's rebuttal argument, therefore, responded to the defendant's closing argument and suggested inferences for the jury to draw about the defendant's veracity on the basis of the evidence. We conclude, therefore, that when viewed in light of the trial as a whole, the prosecutor's comments were not improper and did not constitute misconduct. Accordingly, we reject the defendant's claim of prosecutorial misconduct.[10]

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

[10] Even if we assume arguendo that misconduct occurred, the prosecutor's comments did not deprive the defendant of the right to a fair trial. In cases in which incidents of alleged prosecutorial misconduct were not objected to at trial, following a determination that misconduct has occurred, this court must apply the factors set out by our Supreme Court in *State* v. *Williams*, supra, 204 Conn. 540. See *State* v. *Stevenson*, supra, 269 Conn. 572–76. Among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct

MIHALAKOS, J., dissenting. I respectfully disagree with the majority's conclusion that the trial court properly permitted the prosecutor to inquire into the nature of the civil lawsuit brought by the defendant, Larry Powell, against certain police officers and the city of Stamford. I do not agree that defense counsel "opened the door" to the questioning through his cross-examination of the state's witness regarding a deposition taken in the civil lawsuit. I further disagree that the error was not harmful. Accordingly, I respectfully dissent.

Because the issue of the deposition first arose in the cross-examination by defense counsel of Officer Thomas Scanlon of the Stamford police department, a

---

. . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 540.

In the present case, the state's references, made during its rebuttal argument, to the evidence of the defendant's civil lawsuit were a direct response to and therefore were invited by defense counsel's closing argument. Although the state's comments did directly challenge the veracity of the defendant, when viewed in light of the state's closing argument as a whole, the state's references to the civil lawsuit were not frequent or improperly severe. Furthermore, defense counsel evidently did not perceive the state's closing comments or the admission of that evidence to be particularly harmful. He did not file a motion in limine to preclude that evidence, nor did he object to the state's closing argument, seek a curative instruction, request a specific jury charge or seek a mistrial.

Our Supreme Court has explained that the determination of "whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." *State* v. *Stevenson*, supra, 269 Conn. 575; *State* v. *Negron*, 221 Conn. 315, 330, 603 A.2d 1138 (1992); see also *State* v. *Andrews*, 248 Conn. 1, 19–20, 726 A.2d 104 (1999). Finally, as previously discussed, the substantial physical and testimonial evidence reflected the strength of the state's case and provided the jury with credible evidence on which it could convict the defendant. In light of the *Williams* factors, therefore, even if we assume arguendo that misconduct occurred, it did not deprive the defendant of a fair trial.

review of the cross-examination and redirect examination of Scanlon is necessary to my analysis of the issue. On cross-examination, the following testimony was elicited by defense counsel:

"[Defense Counsel]: Well, at any point in time during your struggle with [the defendant], did you get your hand behind his head like that (indicating), like sort of a full nelson, half nelson?

"[The Witness]: Did I get his hand around his head?

"[Defense Counsel]: Yeah, when you were on top of him, did you get your hand behind his head, you know, behind his head?

"[The Witness]: No. . . .

"[Defense Counsel]: You testified in another proceeding in this matter regarding this. Do you recall giving a deposition?

"[The Witness]: Yes.

"[Defense Counsel]: Okay. And, you—were you sworn under oath in that deposition?

"[The Prosecutor]: Objection.

"[The Witness]: Yes.

* * *

"[Defense Counsel]: And, during that deposition, do you recall saying that you had [the defendant's] hand tucked behind the back of his neck to keep from being struck by the blows?

"[The Witness]: That's inaccurate.

"[Defense Counsel]: That's inaccurate?

"[The Witness]: My head was tucked behind his neck so that my head wouldn't be hit with his blows, and I already testified to that, I believe.

"[Defense Counsel]: So, is it your testimony, that you didn't—this is not what you said during the deposition?

"[The Witness]: I'd like to read it, actually, Your Honor, that might be—

"The Court: Show it to him.

"[The Witness]: Could you show me where you're talking about? No, that's—that's wrong.

"[Defense Counsel]: So, is it your indication that the court reporter who typed this up on the tape was— is inaccurate?

"[The Witness]: Absolutely."

At that point, defense counsel ended his inquiry into the deposition testimony and moved on to questioning Scanlon on another issue in the case. At the opening of the redirect examination of Scanlon by the state, the following testimony was permitted by the court:

"[The Prosecutor]: Counsel had mentioned something about a deposition. Well, what's that all about?

"[Defense Counsel]: Objection.

"[The Prosecutor]: Well, he brought it up.

"The Court: Well, the question isn't very specific. What's the basis of the objection?

"[Defense Counsel]: Objecting on the grounds of relevance that was very—that the question is very limited.

"The Court: I'll overrule the objection.

"[The Prosecutor]: Thank you.

"[The Witness]: The defendant is suing myself as well as the other officers in the city of Stamford for, I believe, $1 million or in excess of $1 million.

"[The Prosecutor]: And that deposition was something you took?

"[The Witness]: Civil.

"[The Prosecutor]: On the civil end of this?

"[The Witness]: Yes.

"[The Prosecutor]: All right. And that hasn't even come out yet, that case?

"[The Witness]: No.

"[The Prosecutor]: That's still pending, as far as you know?

"[The Witness]: Yes."

After examining the foregoing exchange, I see no basis on which the evidence solicited by the state could have been properly admitted by the court.

Initially, I expand on the majority's recitation of the applicable law regarding the "opening the door" doctrine. Although "[g]enerally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject"; (internal quotation marks omitted) *State* v. *Colon*, 272 Conn. 106, 186, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); "[t]he admissibility of [such] evidence . . . is not an automatic right." *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 312, 696 A.2d 363 (1997). "The doctrine of opening the door cannot . . . be subverted into a rule for injection of prejudice. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it *only to the extent necessary* to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . Thus, in making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant

in allowing the rebuttal." (Emphasis added; internal quotation marks omitted.) *State* v. *Colon*, supra, 187.

"It is a fundamental rule of appellate review of evidentiary rulings that if [the] error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . [W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 527–28, 864 A.2d 847 (2004).

I respectfully disagree that the line of questioning by defense counsel concerning Scanlon's deposition testimony invited or "opened the door" to questioning regarding the nature of the lawsuit. Defense counsel's inquiry into the deposition testimony was extremely limited. The questioning was designed only to impeach Scanlon through the use of a prior inconsistent statement he had made regarding the manner in which he had restrained the defendant during his arrest.[1] The

---

[1] "It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. . . . This is based on the notion that talking one way on the stand, and another way previously, raises a doubt as to the truthfulness of both statements. . . . The impeaching statement may be oral . . . or writ-

deposition itself was never the focus of the cross-examination of Scanlon, and defense counsel's reference to the deposition simply identified the venue where the prior inconsistent statement was made.[2] Defense counsel never inquired into or even mentioned the civil lawsuit during the cross-examination, nor would it be necessary to do so to impeach Scanlon on the basis of the prior inconsistent statement. In this case, defense counsel's limited questioning into Scanlon's deposition testimony did not open the door to the state's sweeping and generic inquiry: "Counsel had mentioned something about a deposition. Well, what's that all about?"

Although in the criminal context, the purpose of the "opening the door" doctrine is to "prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context"; (internal quotation marks omitted) *State* v. *Colon,* supra, 272 Conn. 187; this is not a case in which the state would have been at an unfair advantage had the court precluded the rebuttal testimony. The present case is not one in which defense counsel sought to introduce select portions of the deposition testimony and to exclude others not to his advantage. Although a court may, in its discretion, allow otherwise inadmissible evidence on rebuttal when the party initiating inquiry has made *unfair* use of the evidence, defense counsel did not make unfair use of the evidence by mischaracterizing Scanlon's deposition testimony in any way.

---

ten." (Citation omitted; internal quotation marks omitted.) *Falls* v. *Loew's Theatres, Inc.,* 46 Conn. App. 610, 612, 700 A.2d 76 (1997).

[2] Although the majority states that defense counsel used the word "deposition" five times during that line of questioning, that was only because he was required to rephrase his questions following objections by the state. In fact, that portion of the cross-examination testimony that raises the deposition testimony was brief.

Although, undisputedly, the cross-examination into Scanlon's deposition testimony opened the door to certain inquiries by the state that would otherwise be inadmissible, the question that the state asked extended beyond the limits of the opening the door doctrine. The majority refers to the state's right "to place in context testimony adduced by an opposing party . . . ." *State v. Gonzalez*, supra, 272 Conn. 544. The right to place testimony in its context is not an unqualified one, however, and a party does not have free rein to inquire into any matter that would place the testimony in a more favorable light. See *State v. Graham*, 200 Conn. 9, 14, 509 A.2d 493 (1986) (introduction of rebuttal evidence "was not essential to cure the unfairness, if any, that the state may have suffered by the defense counsel's limited inquiry"). The court always must determine that the value of establishing a particular "context" for the testimony outweighs its prejudicial effect on the jury. In my opinion, the question posed by the state was only marginally probative, with its effect being highly prejudicial to the defendant. As such, I believe that the court's decision to permit the questioning constituted an abuse of its discretion.

The question presented by the state on redirect examination was not especially probative of any legitimate issue related to Scanlon's impeachment. Although the state was free to rehabilitate Scanlon, in no way did the elicited testimony demonstrate Scanlon's character for veracity or cast light on the reason for his prior inconsistent testimony. If anything, the state's elicitation of the existence of the defendant's civil action against Scanlon damaged Scanlon's credibility and suggested that he was biased.[3] The state did not attempt

---

[3] Although if the defendant sought to impeach Scanlon on the ground of potential bias, that would necessarily require an inquiry into the civil lawsuit and, as stated previously, the defendant did *not* seek to impeach Scanlon on that ground and never mentioned the civil action.

to draw any connection between the matter on which Scanlon was impeached and the inquiry into the nature of the civil action. See 2 C. Fishman, Jones on Evidence (7th Ed. 1994) § 11:34, p. 354 ("to be admissible, the evidence [proffered on the basis that a party has opened the door to its admissibility] must truly answer or rebut what has already been offered"). Because the state's inquiry was not designed to rehabilitate its witness in any way, it was not at all probative on any *legitimate* issue in the criminal case.

More importantly, the testimony permitted to be elicited on redirect examination was highly prejudicial to the defendant. "[T]he court has inherent authority to *prevent* the jury from being influenced by matters that might prejudice its deliberations." (Emphasis in original.) *State* v. *Martin*, 77 Conn. App. 818, 829, 827 A.2d 1 (2003). "Evidence is prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) Id., 830. In the present case, the jury was permitted to hear testimony that the defendant was suing certain police officers and the city of Stamford for millions of dollars. There is often a stigma attached to those who bring lawsuits against their local governments for millions of dollars; the connotation sometimes is that such individuals are motivated solely by money.[4] That evidence unfairly took the jury's attention away from the facts of the criminal case and emphasized a controversial lawsuit that carried negative connotations about the criminal defendant. The degree of prejudice suffered by the defendant was exacerbated by the repeated reference by the state throughout the remainder of the trial to his "million dollar lawsuit." The court's decision to

[4] In fact, the prosecutor in his rebuttal argument referenced the civil action and stated numerous times that the defendant was motivated solely by money. See part II of the majority opinion.

permit that testimony and, thus, to open the floodgates to further inquiry into that irrelevant matter was clearly an abuse of discretion.

We will not disturb a court's improper evidentiary ruling, however, unless the defendant can demonstrate that he suffered substantial harm as a result of that ruling. See *State* v. *Gonzalez*, supra, 272 Conn. 527–28. I respectfully disagree with the majority that the ruling in this case was not harmful. As stated previously, the evidence of the defendant's civil lawsuit prejudiced the defendant by distracting the jury from the criminal case and appealing to the common prejudice against individuals who sue the government for large sums of money. Our law is clear that "[a]ny improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless." (Internal quotation marks omitted.) *State* v. *Ellis*, 270 Conn. 337, 367–68, 852 A.2d 676 (2004). A review of the record reveals that after Scanlon's testimony regarding the civil lawsuit was admitted, references to the defendant's "million dollar lawsuit" permeated the entire trial from that point onward. Had the court not permitted the initial reference to the nature of the deposition proceedings, it is likely that the repeated references to the "million dollar lawsuit" would not have occurred.[5] The most damaging reference to the civil action was made by the state during its rebuttal argument when the prosecutor urged the jury to "[s]ay no more to his million dollar lawsuit. . . . And the way you say no more to [the defendant], based on all the evidence that was elicited in this case, is to . . . find him guilty of those counts." The pervasive

[5] Although the majority correctly points out that defense counsel also raised the issue of the civil action in subsequent witness examinations, I do not see that as determinative of the issue on appeal. I cannot fault defense counsel for attempting to use evidence of the civil action to his client's advantage after the court improperly permitted the initial testimony on the issue.

reference to the civil action, particularly as part of the state's last words to the jury, raises in my mind the great possibility that the jury was prejudiced by the court's initial evidentiary ruling. The harmfulness of the court's decision was further enhanced by its failure to give any limiting instruction regarding the civil action. The trial became contaminated, and the focus of the jury was distracted from the relevant issues in the case. Because the civil action permeated the entire trial, there is a distinct possibility that the jury was improperly influenced by it.

Although there is no dispute that our law permits an inquiry on redirect examination concerning the subject matter to which reference was made in cross-examination, here, the door was never opened so as to permit any inquiry into the nature of the defendant's civil action. If anything was opened, it was Pandora's box that was opened by the court. The result was that the defendant was substantially prejudiced and the propriety of his trial jeopardized. The evidence should have been confined to that which would have determined the guilt or innocence of the defendant. That was not done. For the reasons stated, I respectfully dissent and would reverse the judgment and remand the case for a new trial.